MAY TERM, 1881, No. 59.                    MAY 31ST, 1881.

## Lauth *et al. versus* Walker.

1. Where the Court below made a perfectly fair and correct presentment of the case as it stood upon the contract between the parties, but charged : " If they (the defendants) in taking that measurement perpetrated a fraud for the purpose of deducting or getting coal without paying for it, he (plaintiff) would not be bound by that, because there is no law that would require you to carry

[Lauth *et al. v.* Walker.]

out an agreement which was made with a view to perpetrate a fraud. But the plaintiff must satisfy you that there has been fraud perpetrated in the measurement of this coal;" and there was no evidence of fraudulent conduct upon the part of the defendants in the case; *Held,* to be error.

2. It was agreed between plaintiff and defendants "that the charcoal delivered shall be measured as follows: The wagon-bed to be calculated, and the number of bushels of twenty-six hundred and ninety (2690) cubic inches therein ascertained. The wagon to be filled full of, and the heapage put on with fine charcoal on the job; heapage to be with a twenty-bushel box of twenty-six hundred and ninety cubic inches per bushel. The wagon to be gauged upon the furnace bank by the said Lauth, Thomas & Co., or their authorized agent, at the lowest parts of the bed, and the load so gauged shall be the standard load from which to determine all others." *Held,* that it would not be competent for the plaintiff to prove fraud in the measurement by proving what amount of coal ought, in the opinion of witnesses, to be produced from a cord of wood such as the plaintiff used when coaled in the manner in which he coaled it.

3. Nor can he show that different results would have followed if a different method had been pursued.

4. To prove that a teamster, when he asked for a square cut, was met with a smile, is entirely too indefinite and uncertain a method of establishing so grave a charge as fraud in the measurement.

*Note.*—The Court ought not to be compelled to search through a large mass of testimony, in a paper book, for details of evidence to support the allegations of plaintiff in error, but a precise designation of such evidence should be furnished.

ERROR to the Court of Common Pleas of *Centre County.*

Covenant by Jacob A. Walker against Bernard Lauth, A. H. Peacock, D. P. Greth, and R. C. Thomas, who survive B. B. Thomas, deceased, late trading as Lauth, Thomas & Co.

The plaintiff and defendants entered into an agreement under seal, February 22d, 1877, by which the former undertook to sell and deliver to the latter the charcoal to be by him made from cord-wood on his own land, the wood to be from 1500 to 2000 cords, to be paid for at the rate of six cents per bushel for every bushel of properly coaled charcoal of 2690 cubic inches delivered. It provided further: " It is agreed by the parties hereto that the charcoal delivered shall be measured as follows: The wagon-bed to be calculated, and the number of bushels of twenty-six hundred and ninety (2690) cubic inches therein ascertained. The wagon to be filled full of, and the heapage put on with fine charcoal on the job; heapage to be with a twenty (20) bushel box of 2690 cubic inches per bushel. The wagon to be gauged upon the furnace bank by the said Lauth, Thomas & Co., or their authorized agent, at the lowest parts of the bed, and the load so gauged shall be the standard load from which to determine all others. Said Lauth, Thomas & Co., or their authorized agent, shall have the option of determining which are the lowest places of the bed in all loads gauged, also of making any deductions they may think

[Lauth *et al. v.* Walker.]

proper for dirt, etc., in charcoal delivered, also of determining which is the proper coal to be loaded on the standard load, also of determining disputes that may arise in regard to measurement of charcoal on the job or elsewhere."

Under this contract all the charcoal delivered by Walker was hauled upon four different wagons, which were respectively called the James bed, Boas bed, Clark bed, and the Gardner bed. The standard load of the James bed, as gauged by the defendants, was 127 bushels; that of the Boas bed 126 bushels; that of the Clark bed 147 bushels; and that of the Gardner bed 150 bushels. The plaintiff hauled on the James bed 47 loads; on the Boas bed 136 loads; on the Clark bed 55 loads; and on the Gardner bed 35 loads.

The measurements of the Boas and James beds, made by the defendants, were as follows:

BOAS BED.

| | | |
|---|---|---|
| Length, top, | 16 feet. | } Averaging 183 inches length. |
| " bottom, | 14 " 6 inches. | |
| Width, top, | 5 " $1\frac{1}{4}$ " | |
| " " | 4 " 11 " | |
| " " | 4 " $9\frac{1}{2}$ " | |
| " " | 4 " 8 " | |
| " bottom, | 3 " $1\frac{7}{8}$ " | } Average width, $46\frac{5}{8}\frac{3}{4}$ inches. |
| " " | 2 " $11\frac{1}{2}$ " | |
| " " | 2 " $10\frac{1}{2}$ " | |
| " " | 2 " $9\frac{1}{4}$ " | |
| Height, | 2 " $9\frac{1}{2}$ " | |
| " | 2 " $9\frac{7}{8}$ " | } Average height, $33\frac{1}{15}$ inches. |
| " | 2 " $9\frac{7}{8}$ " | |
| " | 2 " 7 " | |

Deductions, 12 pieces 2 feet 8 inches long, $1 \times \frac{5}{8}$
2 rods 4 feet 7 inches long, $\frac{1}{2}$ inch square.
1 rod 4 feet 10 inches long, $\frac{1}{4} \times \frac{3}{8}$

JAMES BED.

| | | |
|---|---|---|
| Length, top, | 16 feet, 2 inches. | } Average length, 184 inches. |
| " bottom, | 14 " 6 " | |
| Width, top, | 4 " $7\frac{3}{4}$ " | |
| " " | 4 " $9\frac{5}{8}$ " | |
| " " | 4 " $11\frac{1}{8}$ " | |
| " " | 5 " $1\frac{1}{2}$ " | |
| " bottom, | 2 " 10 " | } Average width, $47\frac{3}{32}$ inches. |
| " " | 2 " $10\frac{5}{8}$ " | |
| " " | 3 " $\frac{1}{8}$ " | |
| " " | 3 " $2\frac{5}{8}$ " | |
| Height, | 2 " 7 " | |
| " | 2 " $9\frac{3}{4}$ " | } Average height, $32\frac{9}{32}$ inches. |
| " | 2 " $9\frac{1}{2}$ " | |
| " | 2 " $9\frac{3}{8}$ " | |

The plaintiff was credited on the books of the defendants with 38,529 bushels of charcoal at six cents per bushel, mak-

[Lauth *et al. v.* Walker.]

ing $2311.74, and was charged with merchandise to the amount of $2270.08, which amount was not disputed, leaving a balance to his credit of $ i1.66. On the 14th of March, 1878, before suit was brought, defendants tendered to him $55, which sum was declined, and they then paid it into court.

Plaintiff claimed that he had delivered more charcoal than had been credited to him, and in support of his claim at the trial below gave evidence of the following character:

Plaintiff testified that he had bought the Boas and James beds from Andrew Heaton. Heaton testified that he got them made new; that they were good and substantial beds; that he had run them for six or seven months before he sold them to the plaintiff, and that during this time Harry Curtin had measured them. Curtin testified as to the measurements.

" This is the Heaton bed :

| | | | | | |
|---|---|---|---|---|---|
| Length of bottom rail, | . | . | . | . | 14 feet, 9 inches. |
| "      top rail, | . | . | . | . | 16 "  3½  " |
| Width of bottom in front, | . | . | . | . | 2 " 11  " |
| "      "      behind, | . | . | . | . | 3 "  6  " |
| "      top in front, | . | . | . | . | 4 "  8  " |
| "      "  behind, | . | . | . | . | 5 "  3  " |
| Height in front, | . | . | . | . | 2 "  9  " |
| "      behind, | . | . | . | . | 2 " 10½  " |

\*          \*          \*          \*          \*          \*

" Question. What was the length of the other bed ?
" Answer.

| | | | | | |
|---|---|---|---|---|---|
| Length of bottom rail, | . | . | . | . | 14 feet, 8½ inches. |
| "      top rail, | . | . | . | . | 16 "  2  " |
| Width of bottom, behind, | . | . | . | . | 3 "  5½  " |
| "      top, " | . | . | . | . | 5 "  2  " |
| "      bottom, in front, | . | . | . | . | 2 " 11  " |
| "      top, " | . | . | . | . | 4 "  8  " |
| Height in front, | . | . | . | . | 2 "  9½  " |
| "      behind, | . | . | . | . | 2 " 11  "  " |

Nathan James testified that he bought the Boas bed from Walker, the plaintiff, in 1878, and proceeded :

" Question. Have you hauled since with that bed to Mr. Lauth's furnace?

" Answer. Yes, sir.

" Q. When ?

" A. In 1878 and fall of 1877."

Defendant's counsel objects to what he hauled since to Mr. Lauth.

Plaintiff's counsel propose to show that this witness purchased the wagon-bed with which George Boas and he both hauled coal for Jacob Walker to Lauth, Thomas & Co.; that

after he purchased it he hauled coal by the bushel for Lauth Thomas & Co. from their own job to their furnace with the' wagon.    It is not denied to be the same as it was when he hauled for Jacob Walker; that he loaded substantially the' same way when he hauled for himself as he did when hauling for Jacob Walker, and that whilst hauling by the bushel himself he hauled a load which was reported as containing 141 bushels; he measured the load himself, and found it to contain 168 bushels, and that as a compromise Mr. Peacock credited him in his book with 155 bushels, being 14 bushels more than he, Peacock, had measured it; that the load was loaded substantially as he had loaded that same bed for Walker when hauling for him, and that the charcoal was measured the same way, the bushel being the same.

The Court admitted this evidence under objection.

The plaintiff being on the stand was asked by his counsel: "Question. How much do these beds hold?"

Defendant's counsel objects.

Plaintiff's counsel propose to prove by this witness what the beds measured before they delivered this coal; secondly, what they measured since; thirdly, by the amount of cords of wood coaled, and what those cords of wood would make by this method of measurement, going to show that Walker got less in bushels than his wood makes.

The Court overruled the objection, and admitted the evidence under objection.

A. C. Boas testified that he had measured the James bed a week before the trial, and the measurement was—

"The length on top 16 feet and 2 inches, on the top on the front end was 4 feet and 7 inches, on the middle it was 4 feet and 8 inches, on the hind end 5 feet 2 inches, on the bottom 15 feet and 2 inches, along the front end 2 feet 10½ inches, in width on the middle 3 feet 2 inches, at the rear end 3 feet 6 inches, and the height of it 2 feet 10 inches; same behind as before."

Plaintiff further showed by several witnesses that the wood which he coaled was pine, oak, and similar wood; that over half of it was big wood, billet wood; that it was well coaled, and that such wood ordinarily yielded from 30 to 33, 35, or even 45 bushels of charcoal to the cord.

William James, for the plaintiff, testified:

"Question. How was the bed filled after that standard load; was it filled full?

"Answer. I put on my bed all I could put on. I was hauling by the bushel.

"Q. You did that because it was to your interest to haul as large a load as possible?

" A. Yes, sir.

" Q. State whether or not it made any difference as to how much you heaped on the bed ? What difference did it make whether you put on much or little ?"

No answer.

" Q. Who usually did the measuring at the bank?

" A. Mr. McKinney, Taylor, and Peacock.

" Q. Did you have any conversation with them ?

" A. Sometimes I would. Sometimes I would ask them to give me a square cut.

" Q. What reply did they make ?

" A. Didn't say anything ; sometimes laughed.

\*          \*          \*          \*          \*          \*

" Q. Did you at any time haul that brag load stated by Mr. Boas ? What was there in reference to that ?

" A. Yes, sir, I did ; 149 bushels ; I wanted to stick on— get in—150 or bust my wagon, and went in.

" Q. How much was in that load after they had measured it,—the load that had 149 bushels ?

" A. 132 bushels.

" Q. Did you have any conversation of any kind at that time as to that load ?

" A. I heard one of them saying, no use in hauling big loads.

" Q. How did that conversation arise ? Had you said anything to them about it ?

" A. We talked. I thought I had over, and it was less.

" Q. And then, in reply, they said,—do you remember who it was said it ?

" A. No, sir ; I don't recollect which said it.

" Q. Was it any of these gentlemen here ?

" A. Yes, sir."

The testimony was voluminous, but the portions given above constitute that which was material.

The Court below, ORVIS, A. L. J., charged the jury, *inter alia*, as follows :

" It is alleged on the part of the plaintiff that the measurements of the coal-beds made by the defendants would not agree with the measurements by him. It is stipulated in the agreement that the measurement shall be made in a particular way, and the measurement shall be made by a rule governing measurements of this kind ; that in this case, as a matter of law, we instruct you their measurements would be binding upon the plaintiff in this case, unless plaintiff satisfies you that there was fraud in their measurements.

[Lauth *et al. v.* Walker.]

" [They may have stipulated that a bed should be measured and that a load should be gauged according to the measure stipulated in the agreement, but in making that measurement have used deception or fraud ; why then, as a matter of course, the plaintiff would not be bound by it. In this case, though the plaintiff has consented that the defendants should make these measurements, and also shall have the option of determining certain things connected with the measurement of this charcoal, and unless the plaintiff himself satisfies you that there was fraud practiced in such measurement, then as a matter of law we instruct you that he is bound by their report of measurement.   He agreed to abide by their measurements made in a particular way, and he cannot after that go and claim that he is not getting a fair measurement.  He agreed with the defendants that they should pay him six cents a. bushel for all the charcoal delivered by him in that year upon the furnace banks, measured in that way, not measured in some other way.   The plaintiff is bound by it.   But if they, in taking that measurement, perpetrated a fraud for the purpose of deducting or getting coal without paying for it, he would not be bound by that, because there is no law that would require you to carry out an agreement which was made with a view to perpetrate a fraud.   But the plaintiff must satisfy you that there has been fraud perpetrated in the measurement of this coal.]

" There is no dispute as to the contents of the bushel. There have been testified to by witnesses on the stand, four or five different standards for a bushel to measure charcoal. No two of them agree in every particular.   But they will have nothing to do with the finding of your verdict.   If there were no stipulations in the agreement as to what the bushel shall contain and how it should be measured, there would be room for dispute on that point ; but the agreement stipulates what the bushel should be by which it was to be measured, and also how the loads were to be measured and the number of bushels ascertained ; and consequently there can be no room for dispute, except that the measurements were made fraudulently.  If these provisions were put into the agreement for the purpose of measuring and ascertaining the amount of this coal, and if they did not act fraudulently in the measurement, then Walker is bound by it ; and it makes no difference whether the defendants got more charcoal by the operation or less, the plaintiff would be bound by it, or whether the plaintiff got more by it, the defendants would equally be bound by it.

" The only question for you to determine in this case is

[Lauth *et al. v.* Walker.]

concerning the measurement of this coal by the defendants. If they were made by these defendants or their agents in an honest and upright manner, and without fraud, then this contract is to be observed in every particular and the plaintiff is bound by their measurement. If there was fraud perpetrated in the measurement of this coal by these defendants or their agents, then it is not binding upon the plaintiff, and he would be entitled to recover the amount of coal you find was delivered by him and for which he has not been paid. This is the only real question in the case, and you must consider everything that may throw light upon that question. If you find from the evidence that this measurement was made fraudulently, then the plaintiff has a right to recover; but if you find that it was made without fraud, then he is bound by their measurement, for he agreed to be bound by it in the articles of agreement. If you find that these measurements were not fraudulently made, but were made with the articles of agreement with a view of honestly ascertaining the actual number of bushels of charcoal delivered, then the plaintiff is bound by it, and then he has been paid for all the coal he has delivered, except in the amount of $41.60, and they have tendered him that and more and have paid the money into Court. If you find there is only due the plaintiff the sum of $55 or less, then your verdict should be for the defendants, because that money has been tendered him, and it is deposited here in Court for him. [But if you find that he is not bound by their measurement, then you must ascertain the number of bushels he has not been credited with by the defendants, with 2690 cubic inches for a bushel, at the price per bushel as stipulated in the agreement.

" You will now take this case and consider all the evidence that throws any light upon that part of the case, and render a verdict accordingly."]

Verdict for the plaintiff for $507.78, which the Court subsequently reduced to $400.

Judgment entered.

The defendants took a writ of error, assigning for error the admission of the testimony under exception as above specified, and those portions of the charge of the Court contained within brackets.

*A. O. Furst* and *Adam Hoy* for plaintiffs in error.

No fraud was shown or offered to be shown, and no mistake in any of the measurements or calculations under this contract. The measurements were therefore conclusive, and the plaintiff below was bound thereby. These parties were

competent to fix a standard of measurement by which they were to be bound, and that measurement must be resorted to in order to establish their rights and obligations : Leebrick *v.* Lyter, 3 W. & S., 365. The agreement provided that all disputes as to measurement were to be determined by Lauth, Thomas & Co.: Lauman *v.* Young, 7 Casey, 306 ; O'Reilly *v.* Kerns, 2 P. F. Smith, 214 ; Herdic *v.* Bilger, 11 Wr., 60 ; Faunce *v.* Burke *et al.*; 4 H., 469 ; Navigation Co. *v.* Fenlon, 4 W. & S., 205 ; Reynolds *v.* Caldwell, 1 P. F. Smith, 298 ; Snodgrass *v.* Gavit, 4 Casey, 221 ; Howard *v.* Railroad Co., 19 P. F. Smith, 489.

The Court, instead of referring it to the jury, to find fraud where none was proven, should have instructed the jury in positive terms, that no fraud having been shown by the plaintiff, the measurements were conclusive: Herdic *v.* Bilger, *supra* ; Dubois *v.* Smiley, 37 Leg. In., page 486.

*Beaver* and *Gephart* for defendant in error.

There was a distinct allegation of fraud or mistake in the measurement of the coal. The evidence, many-sided in its character, showed that such mistake was made or fraud was perpetrated.

Oct. 3, 1881. The opinion of the Court was delivered by GREEN, J.

The charge of the learned judge of the Court below was a perfectly fair and correct presentment of this case, as it stood upon the contract of the parties. But we encounter a practical difficulty in sustaining what he said to the jury on the subject of fraud. There was nothing legally inaccurate in his remarks as to the effect of fraudulent practices by the defendants in the measurement of the coal. If there were evidence in the case to which those remarks would be applicable, we would affirm the judgment without a moment's hesitation. But, after a most patient and careful examination of the charge of the Court, of the argument of the learned and able counsel for the plaintiff, and of the testimony in the cause, we are unable to discern any evidence of fraudulent conduct on the part of the defendants. The learned judge said several times in his charge that if fraud was perpetrated by the defendants or their agents, in the measurement of the coal, then the measurement was not binding upon the plaintiff, and he could recover for the actual amount delivered. But in no part of the charge is there the least testimony tending to prove fraud, nor is any such testimony submitted to the consideration of the jury. The plaintiff admits, to its fullest extent, the binding character of his obligation to abide by the very precise method of

[Lauth *et al. v.* Walker.]

measurement prescribed in the contract. Was that method observed? If it was, the plaintiff is concluded by the results. If it was not, it is his duty to show it by testimony. He cannot discharge that duty by showing that different results would have followed if a different method had been pursued. Above all, it would not be competent to prove fraud *in the measurement*, by proving what amount of coal ought, in the opinion of witnesses, to be produced from a cord of wood, such as the plaintiff used when coaled in the manner in which he coaled it. The very object of the agreement was to avoid all such uncertain modes of measurement, and the litigation which would naturally result from resorting to them, by prescribing a particular and exact method. In this case the very method fixed by the contract was adopted, and a most precise and definite measurement of the beds in question was made, a record of which was kept and given in evidence. There is not a particle of testimony to contradict either the fact of that measurement or its accuracy. Nor is there any evidence showing that the number of bushels to the load, as ascertained by that measurement, was incorrectly returned, or credited to the plaintiff. To prove that a teamster when he asked for a *square cut,* was met with a smile, is entirely too indefinite and uncertain a method of establishing so grave a charge as fraud in the measurement. It was equally incompetent to make out such a charge by proving what the beds measured at another time, before or after the delivery of coal under this contract, as that was not in accordance with the terms of the contract. If the plaintiff was dissatisfied with the results of the measurement, he should at once have complained to the defendants, and then a re-measurement could have been made while the contract was being performed. But this he did not do, and he now seeks to accomplish such results by resorting to methods not permitted by the contract.

It is to be regretted that a more precise designation of the evidence tending to show fraud has not been furnished to us. For lack of such information we have been compelled to expend valuable time, which we cannot spare, in searching through a large mass of testimony for details of evidence which would support the plaintiff's allegations. With a perfect willingness to find it if it existed, and to sustain the action of the Court below in submitting the case to the jury on the question of fraud, if we could do so, we have been quite unable to discover the evidence necessary for that purpose, and we are therefore obliged to reverse the judgment on that ground.

Judgment reversed, and *venire facias de novo* awarded.